FOURNET, Chief Justice.
The plaintiffs[1] are appealing from a judgment dismissing their suit against their nephew and cousin to have rescinded a deed executed by Mrs. Bella Talbert on December 27, 1938 (seventeen years previously), conveying to the defendant’s mother, Mrs. Ethel Sibley Talbert (now deceased), some 200 acres in DeSoto Parish with the improvements thereon. In the same suit they also sought, as a corollary, to have rescinded the judgments in the successions of the defendant’s mother and father under which he inherited the property, and an accounting of the $9,000 he received for a royalty interest therein.
The deed in controversy is notarial in form, carrying with it full subrogation of all rights as well as warranty. In it the purchaser declared she was acquiring “with her separate and paraphernal funds, and for her separate use and benefit, which property shall be her separate and paraphernal property,” the consideration being “the sum of Two Hundred ($200) Dollars cash in hand paid, receipt of which is hereby acknowledged, and subject to a first mortgage in favor of Federal Land Bank of New Orleans, in the sum of Thirty-five Hundred ($3,500) Dollars, of date June 25, 1925, as recorded in Book 2, * * * and a second mortgage in favor of Future Holder, in the sum of Eight Hundred Eighty-two and 8?ioo ($882.32) Dollars, of date May 29, 1936, as recorded in Book 38 * * *, and to a judgment as procured by DeSoto Bank and Trust Company as against Mrs. Bella Talbert, et al, of date October 9, 1936, as recorded in Book 38 of Mortgages, page 566 * * * said judgment in the amount of Two Hundred Sixty-one and 9%oo ($261.96) Dollars.” (It should be noted that this last amount is erroneous. The correct amount of the judgment secured and recorded, not considering interests, fees, and costs, is $1,261.96.)
*505 As grounds for the rescission the plaintiffs alleged the deed was not a bona fide sale in fact since (1) it was signed by Mrs. Talbert when she was old, ill, and under the influence of narcotics and therefore unaware of what she was doing, and, if aware, then that it was executed through fraud, error, and trickery, she believing the document signed was in favor of her son Robert, husband of Ethel Sibley Talbert, and gave him nothing more than the right to live on the premises during his lifetime. In the alternative, plaintiffs contend the deed was (2) without consideration, and (3) if for a valuable consideration, then there has been a failure of consideration because the ven-dee not only did not assume the mortgages and judgment detailed in the deed, but did not pay the $200 cash consideration therein recited, and it was, as such, a donation in disguise, which rendered it an absolute nullity under Article 1497 of the Revised Civil Code since Mrs. Talbert thereby divested herself of all of her property, without sufficient reserve for subsistence.
In this court appellants have apparently abandoned their contention that Mrs. Tal-bert, because of senility and medication, was unaware of what she was doing, as this is not argued in brief and there was no oral argument. Instead, they have made a feeble effort to substantiate their other contentions, relying on excerpts quoted from the testimony of several of the witnesses that have little, if any, effect on the final determination of the case, and particularly on that portion of the testimony of E. H. Gibbs, the only living party among those that participated in the deed’s confection, which is to the effect' that he saw no money pass at the time and did not remember hearing anything read about consideration, although these same excerpts disclose this witness further stated most positively the document was read at the time, that it was clearly a deed to land, and that it thereby transferred title to Mrs. Ethel Talbert. Reliance is also placed on certain excerpts from the testimony of this witness along with others, including two of the plaintiffs, to the effect that Mrs. Talbert wanted to fix her affairs so that her son Robert could have a home for the rest of his life, that she loved her home, and often said she would never sell it.
We have no doubt Mrs. Talbert loved her home, for it appears that with the exception of a few years she lived there all of her 84 years. And when we consider the facts disclosed by the record, which show that Robert and his wife (Mrs. Ethel Sibley Talbert) had gone to live on the place with Mr. and Mrs. Talbert in 1924 (when the father was 74 and the mother 67), and had stayed with them from that time, running the farm, attending to all of their business, and caring for them during their declining yqars and last illnesses, it is not difficult to believe she wanted this son to have the place for a home during the remainder of his life. This, however, she could accomplish only in the manner in which she did, i. e., by carrying out the compromise agreement she entered into with the DeSoto Bank & Trust Company in Liquidation with the sanction of the court and the cooperation of her daughter-in-law, it being clear the bank was well aware that both Mrs. Talbert and her son— against whom the $1,261.96 judgment had been secured and was to be executed — were destitute, having neither the means nor the credit to pay the cash consideration of $170 provided in the compromise agreement, much less to discharge the debts encumbering the property. Without the satisfaction of this judgment in the proposed manner, Robert would not have been able to secure further credit with which to farm the land, and, in any event, the property would have been irrevocably lost. The bank, on the other hand, for reasons that will hereafter be shown, was willing to accept the financial ability of Mrs. Ethel Tal-bert to discharge not only its judgment, but the other obligations as well.
It clearly appears from the record that the $200 cash amount recited in the deed was sufficient consideration for such equity *506 as Mrs. Bella Talbert then had in the property, for the uncontradicted evidence shows the outstanding obligations far exceeded its appraised value. And the fact that the purchaser did not in the deed assume to discharge these encumbering debts is immaterial, for she later assumed the obligation of the Federal Land Bank, and it is shown that on January 16, 1939, within a month of the execution of the deed, and on the same day on which the court approved the compromise agreement, she secured the cancellation of the $1,261.96 judgment and the second mortgage of $882.32, giving a second mortgage on the property in favor of the DeSoto bank to secure a $700 note signed by herself, her husband, and her mother-in-law, the amount agreed upon to compromise the judgment. Since that time the 700 note has been paid in full and over $3,000 have been paid toward the liquidation of the Federal Land Bank mortgage.
The suggestion that Mrs. Ethel Talbert was without funds to acquire the property as her separate estate and to discharge these obligations is without substance in fact. The record abundantly discloses that as early as 1924, shortly after she and her husband went to live on the place, her father, Dr. W. F. Sibley, gave her some cows and horses and that she then began a modest dairy business that proved to be the mainstay of the farm during the succeeding years, and that after her father’s death in 1925 or 1926 her mother gave her several thousand dollars from her father’s estate, part of which she used to purchase more cows. With this encouragement, and also help from her son, who proved that in 1938 alone he sent her some $900, she further expanded this business even before she purchased the property, documentary proof establishing that in April of 1938 she bought a milk cooler and engine for over $600. It was also shown that as early as 1932 she owned building and loan stock which she that year pledged as collateral for a loan of $200 and used this money to “pay the taxes on the farm,” and that even before she purchased the property she personally paid installments due the Federal Land Bank on its mortgage.
It is therefore our opinion that trial judge’s conclusion “that the act of sale herein attacked was validly executed and completed for a valuable and sufficient consideration,” is overwhelmingly supported by clear and convincing evidence, and that the judge was, therefore, fully warranted in upholding its validity and dismissing the suit.[2]
This conclusion makes it unnecessary for us to consider the defendant’s pleas of prescription and estoppel which the trial judge referred to the merits and did not finally pass on, but which have been reurged here.
For the reasons assigned, the judgment appealed from is affirmed at the cost of the appellants.
SIM'ON, J., absent.

. The plaintiffs are the three living children of Mrs. Bella Horne Talbert and her husband, Silas F. Talbert, and two of their grandchildren. The third grandchild is the defendant. The record shows that Mr. and Mrs. Talbert had eight children, three of whom died without issue and two of whom, at the time of this suit, had died with issue: 1, Mrs. Merle Talbert Spilker, survived by Felix Spilker and Gladys Spilker Griggs, two of the plaintiffs, and 2, James Robert Talbert, survived by Robert Sibley Talbert, the defendant. The remaining three children are the other plaintiffs: Mrs. Vivian Talbert Minton, Mrs. Mildred Talbert Sebatier, and Silas Frank Talbert.

. The record, to say the least, strongly suggests the institution of this suit was precipitated by the discovery of a gas field near by and the resulting increase in the value of the land by reason of its mineral potential, and, unquestionably, the appeal is a frivolous one.